SYDNEY ROWE VS. FEDERAL BUILDING & DEVELOPMENT CORP. OF THE STATE OF RHODE ISLAND *et al.*

AUGUST 11, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is a bill in equity which seeks specific performance of two alleged agreements, one written and the other oral, for the transfer of stock. After a hearing in the superior court on bill, answer, replication and proof a decree was entered denying and dismissing the bill of complaint. From the entry of that decree the complainant has duly prosecuted his appeal to this court.

One of the respondents is a Rhode Island corporation and the other is an individual, James G. Head now of Los Angeles, California, who is president and treasurer of the respondent corporation. The bill alleges that complainant was employed by the corporation as sales manager of a certain real estate development in the town of Jamestown in this state, known as "Jamestown Shores Plat," under an oral agreement with respondent Head that he would be entitled to receive an "undivided ⅓ interest" in the corporation. Attached to the bill of complaint is exhibit A which is a copy of a written agreement signed by J. G. Head as president and by complainant, evidencing the right of the latter to one third of the "net profits" of the corporation and setting forth in detail the terms of his contract of employment. The bill further alleges that contrary to the terms of said exhibit A the books of the corporation have not been available to him although he has often requested permission to see them.

The bill prays that the corporation be directed to issue one third of its total stock to complainant or, if all of its stock shall have been issued and outstanding, that respondent Head be directed to execute and deliver to complainant 33⅓ per cent of the total stock owned by him, whether standing in his own name or in the name of another person or corporation. The bill further prays that the corporation be directed and required to permit complainant to complete his agreements by allowing him to sell all its property so that he could receive 33⅓ per cent of the net profits therefrom, or that said corporation turn over to him

one third of the property owned by it, or that damages be decreed for him in lieu of the foregoing prayers. The bill also prays for an inspection and audit of the company's records and for incidental relief.

The decree appealed from contains the following findings of fact: "1. The complainant is not entitled to one-third of the stock of the Respondent Corporation. 2. The Complainant is not entitled to complete any agreements for the sale of any lots remaining in Jamestown Shores. 3. The Complainant has not been prevented from seeing the books of the Corporation to determine the amount of money due him from the sale of lots. 4. There is no money due to the Complainant as of the date of trial. 5. The Complainant has failed to prove his contentions as stated in his Bill."

The evidence presented in the instant cause is highly conflicting and clearly irreconcilable. The complainant's basic contention is that he has not received all that he is entitled to under his contract of employment. He produced no expert testimony of an accountant to support this claim although in the course of his testimony he presented numerous books and records of the company as exhibits. Among these were the stock book, records and minutes of certain stockholders' meetings, financial statements from May 1947 to December 31, 1948, the cash journal and the company ledger. He admitted on cross-examination that he had seen the books hundreds of times, but did not examine them because he was not familiar with bookkeeping.

He further admitted that he received the statement shown as complainant's exhibit M, "Jamestown Shores Beginning Jan. 10, 1949," together with a check dated February 15, 1950 for $2,611.03 representing the balance due him to January 31, 1950 as one third of the net profits of the corporation; and that thereafter until he brought the instant bill of complaint on August 25, 1952 he received monthly statements together with corresponding checks

"which represented the amount which the account showed" to be due him.

The complainant not only claims that he had an agreement with the corporation to pay him one third of the net profits for his services, but further asserts that respondent Head orally promised to deliver to him one third of the stock of the corporation. Such agreement was denied by Head, and Judge Richard H. Hunt of Florida, who conducted the stockholders' meeting of November 20, 1950, testified that complainant attended such meeting, answered the roll call as the owner of one share of stock assigned to him as an incorporator, and made no claim to ownership of or interest in any other shares although the alleged oral promise was made long before the date of such stockholders' meeting.

Head testified further that complainant had received all moneys due him under his contract of employment and had never been prevented by him from having access to the books or records of the corporation. This latter statement was corroborated by Ida A. Hurney, its bookkeeper. She testified that she had worked in Head's office since April 5, 1948; that in December 1949 or January 1950 complainant asked her for an "accounts receivable tape," which she sent to him; that in April or May 1950 his wife examined the books for a couple of hours; and that she, Ida A. Hurney, never refused to show the records or to give him any information concerning them.

It appears from the transcript that the records of the corporation were shipped from Florida on November 4, 1952 by air express to the office of respondents' counsel for the purpose of inspection by counsel for complainant. Since that date was more than three months before the hearing in the superior court, it would appear to be a logical inference that complainant's counsel had ample opportunity to examine the records personally or through an auditor select-

ed by him, particularly since many of such records were presented as complainant's own exhibits.

Charles W. Ellis, a public accountant in Miami, Florida, was a witness for respondent. Regarding his qualifications, the following statement of *complainant's* counsel is pertinent: "We have an auditor here, he is Mr. Head's, there is no question of his integrity, ability or anything else, and we might possibly be able to find the answer right here in the courtroom from the auditor on the basis of tax returns."

Ellis testified that he prepares audits for twenty-five to fifty corporations, including those controlled by respondent Head and one controlled by complainant; that he was employed by the respondent corporation since its incorporation; that he set up its books which were kept on the accrual method of accounting, and prepared all its income tax returns; and that in order to arrive at a true statement of accounts between the corporation and complainant he prepared a report, on a cash basis, entitled "Special Report May 1, 1947 To January 31, 1953" which was introduced as respondents' exhibit 9. It appeared therefrom that the amount available for cash distribution from profits was $91,168.33, of which complainant's share would be $30,389.44. Ellis testified that according to the company's records Rowe had actually received $31,789.19 in addition to the amount he put in, representing an overpayment to him of $1,399.75, and that no further payments are due under Rowe's agreement for one third of the net profits of the corporation.

It is well settled in this state that findings of a trial justice sitting in equity are entitled to great weight and should not be set aside unless they are clearly wrong. *Nixon* v. *Connery,* 71 R. I. 142; *Di Libero* v. *Tagliaferri,* 76 R. I. 302. From a careful reading of the transcript we cannot say that on the evidence of record the findings of the trial justice contained in the decree appealed from are clearly wrong.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*James F. Murphy, James R. Morris, John F. McKenna,* for complainant.

*John P. Cooney, Jr., Richard H. Hunt,* of Florida Bar, for respondents.